UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Cause No. 1:19-CR-09-HAB |
| ) | |
| TIMOTHY CANNON ) | |
| ) | |
| Defendant. ) | |

## OPINION AND ORDER

Defendant, Timothy Cannon (Cannon), known to a confidential informant (CI) only by his rap name "Pi Wreckz," is facing gun and drug charges in a three-count federal Indictment. Cannon moved to suppress the CI's identification of him from a lone photograph, contending that the identification process was unreasonably suggestive. (ECF No. 41). The Court held an evidentiary hearing on September 16, 2021. Following oral argument on Cannon's motion, the Court issued a bench ruling denying the motion to suppress. (ECF No. 60). This Opinion and Order serves as confirmation of that ruling.

## FACTUAL BACKGROUND

The Government produced two witnesses at the evidentiary hearing – the CI and the ATF agent investigating the case. The CI, Andre Stribling, testified that on May 24, 2016, he was stopped by the Indiana State Police (ISP) for a seatbelt violation. During that stop, ISP located a firearm after Stribling advised them it was in the vehicle. Stribling, a felon,[1] was arrested and taken to the ATF field office in Fort Wayne. Task Force Officer Caleb Anderson interviewed Stribling, and during that interview, Stribling agreed to cooperate with law enforcement by providing

---

[1] Stribling served a three-year sentence in Ohio for felonious assault.

information he had about narcotics and firearms purchases. Stribling testified that while he believed he had information that would help TFO Anderson, he did not provide it on that date. He did, however, keep in touch with TFO Anderson.

On July 22, 2016, TFO Anderson met with Stribling. Stribling told TFO Anderson that he had purchased cocaine from an individual he knew as "Wreckz" or "Pi Wreckz" on four to five occasions in the past two years.[2] He also indicated that Pi Wreckz also sold firearms and that both the firearms and drug sales occurred at a rap studio in Lima, Ohio. Stribling provided TFO Anderson with the cell phone number for this individual, who Stribling had logged in his phone under the name "Rex." At the hearing, Stribling testified that he had known Pi Wreckz since 2012 and would see him every couple of months. They had mutual friends and engaged socially with each other besides their drug transactions. Stribling was friends with Pi Wreckz on Facebook and Instagram.

Stribling showed TFO Anderson photographs of "Rex" from his Facebook profile. Through more investigation, TFO Anderson identified the individual in the photograph as Cannon and pulled a driver's license photograph of him. TFO Anderson presented the photograph to Stribling who confirmed that the individual in the photograph was the individual he knew to be Pi Wreckz. At that point, Stribling learned for the first time that "Pi Wreckz" was, in fact, Cannon.

On July 22-23, 2016, Pi Wreckz, now known by Stribling as Cannon, contacted Stribling and offered to sell him two firearms and a small amount of cocaine. (ECF No. 41-1 ¶ 2). Cannon sent Stribling a text message photograph of a silver framed revolver with a black grip that he was selling. (ECF No. 41-1 at 4, 5). On July 23, 2016, Stribling spoke with Cannon by phone to arrange

---

[2] Stribling testified that he met with TFO Anderson and provided information about other individuals as well as Pi Wreckz. He testified he met with TFO Anderson on "at least" ten occasions and spoke with him aside from their meetings. The discussion here is limited to Stribling's meetings with TFO Anderson related to Pi Wreckz.

a controlled buy. Stribling testified that the two were to meet on July 27, 2016, at a Wendy's restaurant across from the Pilot Truck Stop in New Haven, Indiana.

On July 27, 2016, Stribling reported to the ATF Office and a pre-buy search of Stribling was conducted, a recording device was placed on him, and he was provided with $700.00 to purchase two firearms and an eight ball of cocaine from Cannon. (ECF No. 41-2 ¶s 8–9). TFO Anderson rode with Stribling to a parking lot on Minnich Road where he met ATF Special Agent Sean Skender. Stribling continued in his vehicle to the arranged location. Surveillance units were dispatched to monitor the transaction from different locations in the parking lot. TFO Anderson observed Cannon arrive at the location and enter Stribling's vehicle. TFO Anderson testified that Cannon was dropped off from a dark colored vehicle on Doyle Road some distance from the meet location and thus he had a chance to take photos of Cannon as he approached Stribling's vehicle. These photos were admitted at the evidentiary hearing (Gov't Exs. 2–5).

Stribling then testified that Cannon entered his vehicle and they completed the agreed upon exchange. Cannon sat in the passenger's side of the Stribling's vehicle next to Stribling for approximately 3-7 minutes to complete the transaction. After the transaction, a black car driven by a black female pulled next to Stribling's vehicle, Cannon exited Stribling's vehicle and entered the second vehicle. Stribling testified that he was not under the influence of drugs or alcohol or any mood-altering substance at the time of the transaction. He further stated that nothing impaired his ability to perceive the events during the controlled buy.[3] When he was debriefed post-buy, Stribling confirmed that the individual he purchased the firearms and drugs from was Cannon whom he knew as Pi Wreckz.

---

[3] Presumably, because of his cooperation, Stribling was not formally charged with any crime from his May 2016 arrest.

## DISCUSSION

As explained above, Cannon complains that TFO Anderson's presentation of the driver's license photo to Stribling raises a presumption of unnecessary suggestion under the Due Process Clause. Due Process requires the court to engage in a two-step analysis. First, the court asks whether the defendant established that the identification procedure was unnecessarily suggestive. *Sexton v. Beaudreaux*, ––– U.S. –––, 138 S. Ct. 2555, 2559 (2018) (due process implicated only where the identification procedure employed was both suggestive and unnecessary); *United States v. Traeger*, 289 F.3d 461, 474 (7th Cir. 2002). "To be 'impermissibly suggestive,' the procedure must 'give rise to a very substantial likelihood of irreparable misidentification.'" *Sexton*, 138 S. Ct. at 2559 (quoting *Neil v. Biggers*, 409 U.S. 188, 197 (1972) (additional internal quotation marks omitted)). If the answer to the first inquiry is no, the inquiry ends there. But even in cases involving unnecessarily suggestive procedures, suppression of the resulting identification is not inevitable. *Id*. When an identification was made under an unduly suggestive procedure, the court then asks whether, under the totality of the circumstances, the identification was reliable despite the suggestive procedures. *Traeger*, 289 F.3d at 474; see also *United States v. Vines*, 9 F.4th 500, 506–07 (7th Cir. 2021).

Cannon asserts that the fact that Stribling was only shown one photo meets his burden of proving that the procedure was unnecessarily suggestive. As Cannon argues it in his motion, Stribling had never met Cannon and was shown a photo plucked right out of thin air and asked to identify whether that individual was the person he knew as Pi Wreckz. (ECF No. 41 at 5: "…it is believed that neither the Special Agent nor the Confidential Informant had ever met Mr. Cannon…Using pictures to identify a person, whom neither party has ever met, is unduly

4

suggestive"). Of course, this argument relies on evidence that Stribling had never met Cannon – evidence which simply is not borne out in the record.

In fact, the exact opposite evidence was elicited by the Government at the evidentiary hearing. Stribling, who the court found to be credible, testified convincingly that he had known Pi Wreckz since 2012, had bought drugs from him in the parking lot of his rap studio in Lima, Ohio several times, had socially interacted with him, and was friends with him on various social media accounts. It was Stribling who accessed Pi Wreckz's Facebook profile photographs and provided them to TFO Anderson. Stribling was able to provide Cannon's cell phone number from which TFO Anderson obtained the driver's license photo he presented to Stribling for identification. This is not just a little evidence to support Stribling's claim that he knew Cannon; *all* the evidence presented at the hearing supported it. And Cannon failed to present any evidence or raise any question as to the procedure used by TFO Anderson to obtain the identification. As the Government vigorously argues, there can be nothing suggestive about TFO Anderson retrieving another photo of someone a confidential informative has already identified. The Court wholeheartedly agrees. The use of a single photograph rather than a photograph array or some other means of identification was unneeded as Stribling had already provided a photo of Cannon to TFO Anderson.

A recent case by this Court's colleagues in the Central District of Illinois is instructive. *See United States v. Harris*, No. 18-CR-30023, 2021 WL 2447229 (C.D. Ill. June 15, 2021). In that case, Harris' co-conspirator, Perez, was shown his Arizona driver's license photograph after she told authorities that she had met Harris on at least four occasions and knew his name to be Christopher Harris. Harris challenged the identification claiming it was unduly suggestive because it was the only photo presented to Perez and she was asked if the person in the photo was her co-

conspirator. The court denied his motion to suppress explaining that the photographic "show-up" procedure was not unduly suggestive given the information already provided by Perez to authorities:

> ..[H]ere, the suggestiveness of the photograph identification is further diminished. Ms. Perez was not identifying a stranger she had only briefly seen. Rather, Ms. Perez was identifying her co-conspirator after sharing that she had met him multiple times and knew his name. There is no indication that Ms. Perez would have been suggestable in such a way that she would be likely to make an incorrect identification.

*Harris*, 2021 WL 2447229 at *6. The same is true here. Stribling was not identifying a complete stranger. He was identifying an individual with whom he socially interacted and had conducted drug transactions with in the past. There was nothing suggestive about the procedure used under these circumstances.

Moreover, even if the procedure could be described as unduly suggestive, the identification was sufficiently reliable. The Court looks to these factors to determine whether an unduly suggestive identification was reliable under the circumstances: "(1) the opportunity of the witness to observe the criminal at the time of the crime (or prior to the identification); (2) the witness's degree of attention; (3) the accuracy of the witness's prior description of the criminal; (4) the level of certainty demonstrated by the witness at the time of the identification; and (5) the length of time between the crime and the identification." *Lee v. Foster*, 750 F.3d 687, 692 (7th Cir. 2014) (citing *Biggers*, 409 U.S. at 199–200); *Cossel v. Miller,* 229 F.3d 649, 655 (7th Cir. 2000).

Cannon has articulated no basis under the above factors to disregard the identification or question its reliability. Unlike most witness identifications, all the evidence establishes Stribling and Cannon were not strangers. Stribling was not identifying Cannon based on a single incident or quick interaction. Stribling knew Cannon for three or four years. He described purchasing drugs from him in face-to-face transactions more than once. He had his cellphone number and testified

that the two were friends on social media. Stribling and Cannon had at least one mutual friend and socialized together at times. There is no evidence of any wavering on Stribling's part when he was shown the photograph. And, perhaps most telling, Stribling set up a buy with Cannon and did not recant his earlier identification after completing that controlled buy. To the contrary, Stribling confirmed that the person he knew as Pi Wreckz (and who he had identified as Cannon) was the person who sat next to him in the vehicle for three to seven minutes during the controlled buy. Given all these circumstances, there is no substantial likelihood of misidentification.

## **CONCLUSION**

For the above reasons, the Court's bench ruling denying the motion to suppress (ECF No. 60) is confirmed.

SO ORDERED on September 21, 2021.

                                            s/ Holly A. Brady
                                            JUDGE HOLLY A. BRADY
                                            UNITED STATES DISTRICT COURT